Case 41.

Ord. Pet.

## Trundle's Administrator *vs.* Riley.

### APPEAL FROM KENTON CIRCUIT.

1. A promise to a jailer, by a prisoner, to pay for services and attention to his prisoner which the law made it his duty to perform, is not obligatory.
2. The promise of a prisoner confined in jail, to pay the jailer for extraordinary attention and services in his sickness, which the law did not make it the duty of the jailer to perform, is binding, and not against public policy.

[The facts of the case are set out in the opinion of the court.—Rep.]

*Stevenson & Kincaid* for appellant—

Argued: 1. The promise, as set out in the plaintiff's petition, not less than the proof as developed in the record, makes out a strong case against public policy, and the integrity of a proper administration of a public office. All such promises are null and void. (*McGill's administrator vs. Burnett,* 7 *J. J. Marshall,* 640; *Wood vs. McCann,* 6 *Dana,* 366; *Marshall vs. Baltimore and Ohio Ruilroad,* 16 *Howard's Supreme Court Rep.* 314; *Hunt vs. Teste,* 8 *Alabama,* 713; *Hazlefield vs. Gulden,* 7 *Watts,* 152; *Fuller vs. Dame,* 18 *Pick.* 472; *Cleppinger vs. Hepbaugh,* 5 *Watts & Seargent,* 315.)

To permit a jailer to make such contracts as that relied on here, would lead to an abuse of official duty, and an unauthorized inequality in the treatment of his prisoners, and should meet with unqualified judicial condemnation.

The law does not sanction the appropriatiou of the public buildings to purposes of private emolument. (*Miller vs. Porter,* 8 *B. Monroe,* 282.)

The recovery was allowed in this case upon the ground that the promise was made by Trundle after his release, which would not have been binding if

made during confinement.  A subsequent express
promise, said Tindall, chief justice, in *Kaye vs. Dutton,*
7 *M. & G.,* "will not convert a debt that in itself is
not a legal debt apart from the promise."  In *Ware vs.
Adams,* 24 *Maine,* 17, it was held that a past benefit,
conferred upon sufficient inducement, and without
expectation of remuneration, does not impose any
moral or legal obligation on the person making it,
and cannot, therefore, support a subsequent promise
to pay.  An examination of the cases in which it
has been held there existed a consideration sufficient
to support a promise, will show that they are cases
of voidable contracts subsequently ratified—of debts
barred by operation of law, and of equitable and
moral obligations, which, but for the rule of law,
would have been sufficient to raise an implied prom-
ise. (See *Note to the case of Wennell vs. Adney, Bo-
sonquet & Puller,* 249 : *Eastwood vs. Kenyon,* 11 *Adol.
& Ellis,* 347 ; 39 *English Common Law Reports,* 143.)

No liability will be incurred by a promise where
none previously existed; and it follows as a neces-
sary corrolary that an existing liability cannot be
varied or extended by the language held by the par-
ties without a new and distinct consideration. (*Mills
vs. Wyman,* 3 *Pick.* 207 ; *Loomis vs. Newhall,* 15 *Ib.*
159 ; *Dearborn vs. Bowman,* 3 *Metcalf,* 155.)

In the present case there was no consideration for
the new promise, except the services rendered whilst
the appellant's intestate was in jail.

Any new contract to carry into effect a contract
which itself is illegal, is not binding. (*Adams vs.
Rowan,* 8 *Smedes & Marshall,* 624 ; *Cutler vs. Robinson,*
14 *Ib.* 18 ; *Craig vs. State of Missouri,* 4 *Pet.* 411.)
Even if such new promise should be made by wri-
ting. (*Lee vs. Bridges, English Common Law Reports,*
649.)

An express promise may revive a promise which
was originally based upon a *good consideration,* and
which has been suspended by some positive rule of
law, but never where it was originally founded on

TRUNDLE'S ADM
*vs.*
RILEY.

a vicious or illegal consideration. (*Ekle vs. Judson*, 24 *Wend.* 97 ; *Chilcot vs. Trimble*, 13 *Barbour*, 508.)

2. The instruction given by the court was clearly misleading, in failing to enumerate all the duties which the law imposed upon the jailer in regard to his attention to prisoners. It singles out certain duties—omitting others.

3. An examination of the testimony will show that it does not sustain the verdict. It fails entirely to sustain the bill of particulars.

*Menzies & Spilman* for appellee—

The question raised by the motion for a *non suit* may be important, but we are not able to perceive it. The evidence conduces to establish the account of Riley against Trundle, and it was proper that the jury should weigh the testimony. The verdict of the jury will not be disturbed if the petition is sufficient.

The question raised by the demurrer to the petition is the question upon which this case should be decided.

Trundle remained in jail from November to April awaiting his trial, not having been able to give bail till April, 1854. Whilst he was in jail he received extraordinary attentions and comforts from the jailer, Mr. Riley. After he became free, he promised to pay Riley. Was the promise binding? Is it contrary to public policy to enforce a compliance with the promise? We answer the first of these questions in the affirmative, and the second in the negative. If Trundle had had money in jail with him, public policy could not have prevented him from buying comforts which were not in the reach of a poor prisoner, and he might have acted with the jailer upon the rule of "pay as you go." If he had paid the jailer $100 for extra comforts, could the administrator recover it? But Trundle, although a man of wealth, had no money when he was put in jail. Somehow, he obtained credit with the jailer,

and after he got free he promised to pay the jailer. <span>TRUNDLE'S ADM<br>*vs.*<br>RILEY.</span> Had he paid the money, instead of making the promise, could the administrator recover it? If not, he cannot resist the claim of Riley upon the promise.

The cases in 7 *J. J. Marshall*, 640, and 6 *Dana*, 366, are not like this case. The promises to pay were made in consideration of efforts to be made with the governor and the legislature. Here the promise was made in consideration of what had been done, and there is but one difficulty in upholding it. If it were unlawful for a jailer to furnish a prisoner, awaiting his trial, extra comforts, then it might be contended with some plausibility, that a promise afterwards made to pay for such things would not be good. But this cannot be the law. It cannot be presumed that the jailer would neglect penniless prisoners because a wealthy man in jail chose to enjoy extra comforts. It is known to the whole country, that where the friends of a prisoner awaiting his trial choose to furnish him, the jailer will not forbid it. The law does not authorize him to prevent it.

Judge DUVALL delivered the opinion of the court:    October 11.

The only question made in this case is whether the contract on which the appellee recovered in the circuit court, or the consideration on which it is founded, is illegal, against public policy, and, therefore, not enforceable by law.

Trundle was confined in the jail of Kenton county from November, 1853, to some time in the month of April following. He was sick during this whole period, requiring the regular and constant services of a physician, and extraordinary attention and services from the jailer, who it appears was a blacksmith. It is proved that the jailer abandoned his work at the request of the prisoner, who promised him, that if he would quit his trade, and give his time and attention exclusively to him (Trundle) he

would give him twice as much as he could make otherwise; that the appellee agreed to do so, and faithfully performed his part of the agreement. That after Trundle's discharge from custody, he repeatedly acknowledged his indebtedness for these services and benefits, and promised to pay the claim as soon as he could raise the means by the sale of some stock. Having died shortly afterwards, this suit was brought against his administrator upon the contract as stated.

The law imposes upon the jailer the general duty of supplying the prisoners in his custody with wholesome food, fire, comfortable beds, and, in case of sickness, with proper medical aid. Of course any agreement or promise by a prisoner to pay for accommodations and services such as these would be nugatory, upon the obvious ground of want of consideration. This duty of the jailer, and the corresponding right of his prisoner, is embodied in the instructions given by the court to the jury on the trial. Those instructions are as follows:

1. "If the jury find, from the evidence, that Trundle was sick in jail, and that the jailer rendered him attentions which he was not required to do by virtue of his office of jailer, and that Trundle promised to pay for such extra services after he was released from jail, then they should find for the plaintiff the value of such etxra services as they should find were rendered by the jailer."

2. "The jailer was required, by virtue of his office, to furnish the prisoner with food and fire, and to keep his room clean, and to go for a physician when one was necessary, and for these services he was not entitled to any pay from the prisoner."

1. A promise to a jailer, by a prisoner, to pay for services and attention to his prisoner, which the law made it his duty to perform, is not obligatory.

It seems to us that this statement of the general duty of the jailer was sufficiently comprehensive, and could not have misled the jury, as contended, because it failed to specify, in detail, all the services and supplies to which the prisoner was entitled as matter of right.

It is conceded by the counsel for the appellant that no objection can be made to the legality of this contract, based upon any undue influence which might be presumable from the relations the parties sustained towards each other, such ground of objection being removed by the subsequent promise of the prisoner made after his release. But it is urged that the subsequent promise can give no validity to a contract the enforcement of which is subversive of public policy, and inconsistent with the rights and interests of society, and that this doctrine was settled in the case of *Miller vs. Porter*, 8 *B. Monroe*, 282.

That was a suit by Miller, the owner of a slave which had been placed in the custody of the jailer for safe keeping, against Porter, the jailer, for allowing the slave to escape. Porter had agreed, for a stipulated reward, to receive and keep the slave in the public jail for the owner, and it was held that on such a contract neither party could maintain an action; that the jail is public property, provided for public uses, which are defined by law; that the jailer has no right to convert the building into a receptacle for slaves at the request of their owners, and from mere motives of private gain, at the hazard of the public property placed under his control, and of the comfort and health and safe-keeping of the prisoners lawfully committed to his custody; that such contracts are against law and public policy, involving an obvious breach of official duty, and therefore cannot be enforced.

This reasoning, and these principles, are no doubt sound, but they have no sort of application to the case under consideration. The two cases are unlike in every essential particular. Here, it cannot be said that the jail was converted to the private uses of the jailer, for his private emolument, or that the safety of the building was endangered, or that the comfort and health and safe-keeping of other prisoners was, or could reasonably be presumed to be, impaired. The prisoner was lawfully in custody of

VOL. XVII.        26

2. The promise of a prisoner confined in jail, to pay the jailer for extraordinary attention and services in his sickness, which the law did not make it the duty of the jailer to perform, is binding, and not against public policy.

the jailer, fell sick and continued sick throughout the entire winter and spring. In that condition he needed, or thought he needed, attentions and accommodations and services which he knew the jailer was not bound to furnish or render, and which he therefore promised the latter to pay for. The jailer, impelled no doubt as much by a sense of humanity, as by any motive of personal gain, quit his trade and business, and devoted his time and attention to the constant demands of his prisoner. It seems to us that there is nothing illegal in all this, and nothing subversive of public policy, or inconsistent with the public interests ; but that, on the contrary, such services and attentions, rendered under such circumstances, formed not only a legal but most meritorious consideration, for the promise afterwards made to pay for them.

But it is insisted that a jailer may abuse his powers, and violate his duties, by making contracts with prisoners under his control, for extra compensation for luxurious fare and extra accommodation, and that the judicial approval and enforcement of such contracts would hold out to such officers very strong temptations to commit frauds and breaches of official duty.

It is a sufficient answer to this and other similar suggestions, to say that no such contract is sought to be enforced here, and that no such state of case is presented by the proof. Such official misconduct would subject the officer to immediate suspension by the county court under an express power conferred by the Revised Statutes, and this penalty it may be presumed will in general be sufficient to restrain the jailer and protect prisoners and all others against official delinquencies of this kind. The whole argument, it seems to us, amounts to but little more than this: that the right of the appellee to recover in this action should not be allowed, because the same right may be abused and prostituted by others similarly situated, and thus become the instrument of oppres-

sion and fraud—an argument we need not undertake to refute.

In the case of *McGill's administrator vs. Burnett*, 7 *J. J. Marshall*, 640, the promise was to pay $100 in consideration of services to be rendered by Burnett in procuring the remission of a forfeiture. This agreement was declared illegal, upon the ground that it was an unwarrantable interference with the administration of justice, and therefore against public policy. And the numerous other authorities cited by the appellant assert the same principle—that no recovery can be had upon a promise based upon an illegal consideration. No case has been referred to, however, and none, we imagine, can be found, in which the consideration relied upon in this action, has been decided to be illegal, or against either public policy or good morals.

The judgment is affirmed.